UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

**CELESTINE MICHELLE POLK**
       **Plaintiff**

**VERSUS**

**DUBUIS HEALTH SYSTEM D/B/A**
**DUBUIS HOSPITAL OF ALEXANDRIA**
       **Defendants**

**CIVIL ACTION NO. _____**

**JUDGE_____**

**MAGISTRATE_____**

## COMPLAINT AND JURY DEMAND

NOW INTO COURT, comes plaintiff CELESTINE POLK, by her undersigned counsel, and hereby makes her Complaint against Defendant, DUBUIS HEALTH SYSTEM D/B/A DUBUIS HOSPITAL OF ALEXANDRIA (hereinafter referred to as "Defendant Dubuis"), as follows:

### JURISDICTION AND VENUE

1.

This Court has jurisdiction pursuant to Title 28 of the United States Code, Section 1331, as this is a civil action arising under the laws of the United States, particularly the Employee Retirement Income Security Act of 1974 (ERISA) as amended by the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA), 29 U.S.C. §1161 *et seq.*, the Family Medical Leave Act of 1993, 29 U.S.C. §2615 *et seq* (FMLA).

2.

This Court has supplemental jurisdiction over the state law claims pursuant to Title 28 of the United States Code, Section 1367. Under Louisiana state-law theories of

liability, plaintiff seeks damages from defendant, for wrongful termination, and related causes of action, and intentional infliction of emotional distress. The state causes of action alleged in this Complaint arise from a nucleus of operative fact common to those causes arising under 29 U.S.C. §1161 *et seq*., and because the exercise of supplemental jurisdiction serves the interests of judicial economy, convenience, and fairness to the parties.

3.

Venue is proper in this judicial district pursuant to Title 28 of the United States Code, Section 1331. A substantial part of the events and conduct giving rise to this action were committed in Louisiana.

## THE PARTIES

4.

At all times relevant hereto, Plaintiff, CELESTINE POLK, is now, and at all times mentioned in this complaint was, a resident of Alexandria, Rapides Parish, State of Louisiana, and presently resides at 2600 Los Angeles Street, Alexandria, Louisiana. Plaintiff is African-American.

5.

Defendant, DUBUIS HEALTH SYSTEM, D/B/A DUBUIS HOSPITAL OF ALEXANDRIA (The Employer), is now, and at all times mentioned in this complaint was, a not-for-profit corporation duly organized and existing under the laws of the State of Louisiana, engaged in the business of operating long-term acute care health facilities, with its headquarters located at 10333 Richmond Ave Ste 300, Houston, Texas. Defendant is and at all times mentioned herein was an employer within the meaning of ERISA, COBRA, and FMLA.

## **STATEMENT OF FACTS RELEVANT TO ALL CLAIMS**

6.

On or about September 22, 2002, plaintiff was hired by Dubuis Hospital of Alexandria as a Certified Nursing Assistant.

7.

Within one year of her hire, Plaintiff was promoted to a Level 3 position. Plaintiff's Level 3 responsibilities included assuming the duties all at once as a Unit Secretary, a Monitor Tech, and a Certified Nursing Assistant.

8.

Plaintiff work at the Dubuis Hospital of Alexandria in her Level 3 position until she was dismissed from the same on September 9, 2005.

9.

The alleged incident which led to her dismissal occurred on Friday, September 2, 2005. On the aforesaid date, Plaintiff was scheduled to work from 7:00pm to 7:00 am. Plaintiff reported to work even though she was ill.  Around 10:15pm, Plaintiff explained to her immediate supervisor, charge nurse Toni Smith, that she did not feel well and asked to be allowed to leave.  Plaintiff's supervisor at first suggested that she take some medication in the hope that this might cure her ailment; nonetheless, Plaintiff refused this suggestion and was finally granted permission to leave.

10.

After this incident, Plaintiff was not scheduled to work for the next three or four days. The Plaintiff's condition did not improve after leaving work, so she went to the doctor on September 6, 2005, where she underwent a series of testing to get at the root cause of her excessive bleeding, headaches, and pain.

11.

On September 7, 2005, Plaintiff returned to work her 3:00pm to 11:00pm shift. Upon clocking in, Mr. Ray Owens, Defendant Dubuis' hospital administer, summons Plaintiff to his office, wherein he reprimanded her for leaving her job without permission on September 2, 2005. Defendant's clinical coordinator health nurse, Denita Morehouse, was present during this reprimand.

12.

While in Mr. Owens office, Plaintiff explained to both Mr. Owens and Ms. Morehouse that she had received permission to leave from Ms. Smith and that she was and continued to be very sick. Plaintiff explained that she had been to her doctor for testing, which as of that date, was not complete. Plaintiff promised to inform them of the results of her testing as soon as she knew. Plaintiff also provided the supervisor with a doctor's excuse and documentation of four prescriptions.

13.

On September 8, 2005, Plaintiff worked her normal 3:00pm - 11:00pm shift.

14.

On September 9, 2005, Plaintiff was scheduled to work from 7:00pm to 7:00am.

15.

On the morning of September 9, 2005, Plaintiff underwent a pelvic ultrasound per her doctor's orders.

16.

On the afternoon of September 9, 2005, a few hours before she was scheduled to report to work, Plaintiff received a call from Ms. Morehouse requesting Plaintiff report at 4:00pm to Mr. Owen's office. Plaintiff complied.

17.

Upon arrival, Plaintiff's employment was terminated by Mr. Owens allegedly for job abandonment on September 2, 2005. Defendant's Director of Nursing, Beth Parsons was present in Mr. Owen's office.

18.

During this meeting, Plaintiff implored that she received permission to leave, that she was and continues to be sick, even showing her wristband from having taken an ultrasound earlier that day.

19.

Mr. Owens asked Plaintiff to sign a Disciplinary Counseling Report, which she declined.

20.

On September 12, 2005, Plaintiff filed for unemployment benefits. Plaintiff was granted unemployment benefits.

21.

Also on that day, Plaintiff was informed that the results of her exam on September 6, 2005 were that she had uterine cancer, a very serious medical condition. Plaintiff contacted Ms. Morehouse to inform her of the diagnosis from her medical testing.

22.

On September 14, 2005, Plaintiff underwent a CT Scan of her pelvis.

23.

On September 21, 2005, a cone biopsy was completed to determine the severity of the plaintiff's condition. On this same day, Defendant Dubuis' Human Resource Representative, informed Plaintiff that this procedure would be the last one paid for by Defendant Dubuis.

24.

On October 7, 2005, the plaintiff met with her doctor and discussed the risks and treatment available for her illness.   Plaintiff's doctor informed her that the hysterectomy must be performed immediately.  Plaintiff no longer had health insurance with Defendant Dubuis.

25.

On November 7, 2005, Defendant Dubuis filed an appeal to Plaintiff's award of employment benefits, claiming misconduct.

26.

On November 9, 2005, due to Plaintiff losing her health insurance when she was terminated, she could not pay the costs to get a hysterectomy completed by her regular doctor, so she was referred to a charity hospital, Huey P. Long Hospital, for the surgery.

27.

On February 23, 2006, the employment benefits appeal hearing was conducted. The Administrative Law Judge found that the plaintiff had not committed misconduct and affirmed the employment agency's decision.

28.

At all times relevant to this Complaint, Plaintiff performed her duties in a satisfactory and competent manner which was acceptable to her employer.  During her three years working for the defendant, Plaintiff has had an outstanding work record; she never before requested permission to leave her job; and she had never before been disciplined.

29.

At all time relevant to this Complaint, Defendant Dubuis never offered Plaintiff COBRA benefits or continuation of her existing coverage at her own expense, all the while knowing of her serious medical condition.

30.

At all times relevant to this Complaint and despite her serious medical condition, Plaintiff's employer never offered her the option to take leave under FMLA.

31.

On May 8, 2006, Plaintiff timely filed a Charge of Discrimination with the EEOC and LCHR.  Plaintiff has not received a Notice of Right to Sue and reserves her right to supplement and amend this Petition to add her claims against defendant under Federal law.

32.

On September 5, 2006, Plaintiff sent demand to defendant pursuant to LSA-R.S. §23:301, *et seq*., including advising defendant that Plaintiff, had filed a Charge of Discrimination with the EEOC and LCHR.  Plaintiff has not satisfied all conditions prerequisite to suit pursuant to LSA-R.S. §23:301, *et seq*., and reserves her right to supplement and amend this Petition to add her claims against defendant under state law.

## COUNT I

## **COBRA VIOLATION**

33.

Plaintiff realleges paragraphs 1 through 32 and incorporate the same by reference as if the same were fully set forth herein.

34.

Defendant Dubuis is a covered employer under COBRA for it employs the requisite number of employees to necessitate compliance with COBRA's notification requirements.

35.

Plaintiff is a covered person under COBRA because her employment was terminated and said termination could be deemed a qualifying event that entitled her to continued health insurance coverage pursuant to COBRA 29 U.S.C. §1163(2).

36.

Both before and after Plaintiff's termination, Defendant Dubuis failed to notify Plaintiff of her right to health care continuation coverage, as required by 29 U.S.C. §§1163(2), 1166(a)(2), (4).

37.

Defendant Dubuis further failed to offer Plaintiff the opportunity to continue her existing coverage under the Defendant's group health plan at her expense for a specified period of time.

38.

As a result of Defendant's COBRA notification violation, Plaintiffs pray for relief as provided for by 29 U.S.C. §1132(a)(1), (c)(1): benefits recovery, punitive damages, attorneys' fees and costs, and such other relief as determined by the Court.

## COUNT II
## FAMILY MEDICAL LEAVE VIOLATION

39.

Plaintiff realleges paragraphs 1 through 38 and incorporate the same by reference as if the same were fully set forth herein.

40.

Defendant Dubuis is a covered employer under the FMLA having at least 50 employees on each working day of 20 or more calendar work weeks.

41.

Plaintiff was a full-time employee who Defendant employed for over one year.

42.

Defendant Dubuis personnel policies recognized FMLA's allowance for a 12 week leave of absence for serious medical conditions such as Plaintiff's.

43.

On September 7, 2005, Plaintiff spoke with Mr. Owens and informed him that she had been to her physician during the prior week and had undergone testing. Plaintiff provided the employer with sufficient information to give reasonable notice of a leave request when she provided her employer a doctor's excuse and a copy of four prescriptions.

44.

Rather than wait the results of the test, within two days, Defendant terminated Plaintiff in violation of FMLA.

45.

Plaintiff alleges that at the very time she was terminated she had a serious medical condition as that term is defined by the FMLA. Plaintiff alleges that such fact was well known to Defendant Dubuis and that her termination was in violation of her entitlement to FMLA leave in violation of 29 USC §2615 and in retaliation for her needing such leave.

46.

Plaintiff avers that Defendant Dubuis violated the FMLA by terminating her employment while knowing she had a serious medical condition under FMLA and by canceling her medical insurance, as mandated in the Labor Department's Regulations under the FMLA §825.311(b).

47.

Plaintiff alleges that the actions of Defendant Dubuis were in willful violation of the statute entitling Plaintiff to liquidated damages as provided in 29 USC §2617.

48.

As a result of Defendant Dubuis' actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

49.

Plaintiff states that she has been damaged and has lost pay and benefits as a result of her termination and she therefore sues for back pay to the date of trial, together with front pay in lieu of reinstatement, which Plaintiff says is not feasible. Plaintiff is also suffering severe emotional distress from Defendant's intentional, willful, and reckless action, for which she sues Defendant. Plaintiff also sues for attorney's fees, pre-judgment interest and all damages resulting from her loss of benefits both past and in the future.

## COUNT III
## WRONGFUL TERMINATION DUE TO BREACH OF IMPLIED CONTRACT

50.

Plaintiff realleges paragraphs 1 through 49 and incorporate the same by reference as if the same were fully set forth herein.

51.

Plaintiff avers that defendant Company employed her under an implied contract of long term employment and that her employment was not at will.

52.

The terms of the contract relied on by plaintiff included but were not limited to: (a) written personnel policies which provided that: (1) if an employee was performing unsatisfactorily the employee would be disciplined in accordance with defendant employer's progressive disciplinary steps (See Defendant's Policy HR1.20DHS); and (2) employees would be treated fairly and with integrity (See Defendant's Policy HR1.20DHS); and

(b)    employee staff meetings where management would stress that employees had a contract of employment for so long as she performed Plaintiff's job in a satisfactory manner, demotion or discharge could only be for good cause proven and then would be carried out only in accordance with the stated written policies of defendant employer.

53.

Plaintiff was terminated suddenly from her position of employment with the Defendant, without the normal procedures and safeguards that the Defendant ordinarily gives its employees.

54.

Plaintiff's termination was contrary to Defendant's established company personnel policies, in that written personnel policies provided for notice of unsatisfactory performance, and written reprimands, prior to termination.

55.

At the time of Plaintiff's termination, Defendant had promulgated and maintained an oral and written policy and practice relative to employee absences. Defendant's Policy HR2.05DHS provides a process that is to be followed in the case of excessive absences. Defendant failed to follow this policy and practice with regard to the Plaintiff.

56.

Likewise, at the time of Plaintiff's termination, Defendant had promulgated and maintained an oral and written policy and practice for employee grievances. Defendant's Policy HR2.20DHS provides an Associate Grievance Procedure in which Plaintiff attempted to follow after her dismissal. She was informed that this procedure does not apply to her.

57.

Plaintiff avers that defendant Company terminated her employment without just cause and therefore in breach of the implied employment contract, causing plaintiff to be damaged.

58.

Defendant's termination of Plaintiff purposefully interfered with the plaintiff's right to continued health benefits under Defendant's employee benefit plan, with Plaintiff's expectancy of life insurance and disability insurance benefits under defendant's insurance and retirement plans, thereby causing Plaintiff to lose substantial health and insurance benefits, life insurance benefits, retirement benefits, wages and other fringe benefits of employment.

## COUNT IV
## BREACH OF THE COVENANT OF
## GOOD FAITH AND FAIR DEALING

59.

Plaintiff realleges paragraphs 1 through 58 and incorporate the same by reference as if the same were fully set forth herein.

60.

In accordance with the Defendant's Associate and Management Standards of Conduct and as a result of the employment relationship that existed between plaintiff and defendant employer, the expressed and implied promises made in connection with that relationship, and the acts, conduct, and communications resulting in these implied

promises, defendant employer promised to act in good faith toward and deal fairly with plaintiff. This requires, among other things, that:

(a) each party in the relationship must act with good faith toward the other concerning all matters related to the employment;

(b) each party in the relationship must act with fairness toward the other concerning all matters related to the employment;

(c) neither party would take any action to unfairly prevent the other from obtaining the benefits of the employment relationship;

(d) defendant would similarly treat employees who are similarly situated;

(e) defendant would comply with its own representations, rules, policies, and procedures in dealing with plaintiff;

(f) defendant would not terminate plaintiff without a fair and honest cause, regulated by good faith on defendant employer's part;

(g) defendant would not terminate plaintiff in an unfair manner; and

(h) defendant would give plaintiff's interests as much consideration as it gave its own interests.

61.

Plaintiff relied on these representations to her detriment, when she requested sick leave, obtained it, only to be terminated for ultimately abiding by the Company's policies in obtaining leave.

62.

Defendant employer's termination of plaintiff was wrongful, in bad faith, and unfair, and therefore a violation of defendant employer's legal duties pursuant to La Civ. Code articles 1759, 1170, 1983, and 1967.

63.

Plaintiff further alleges that defendant employer breached the covenant of good faith and fair dealing when it:

(a) failed to abide by its own policies when dealing with plaintiff;

(b) unfairly prevented plaintiff from obtaining the benefits of her employment relationship;

(c) terminated plaintiff's employment in a manner that was inconsistent with defendant employer's stated policies and practices.

64.

Defendant employer's breach of the covenant of good faith and fair dealing was a substantial factor in causing damage and injury to plaintiff. As a direct and proximate result of defendant employer's unlawful conduct alleged in this complaint, plaintiff has lost substantial employment benefits with defendant employer, including loss of reputation, lost wages, and other employee fringe benefits, the precise amount of which will be proven at trial.

65.

As a further direct and proximate result of defendant employer's wrongful conduct, plaintiff has suffered extreme anguish, humiliation, and emotional distress, the extent of which is not fully known at this time, the precise amount of which will be proven at trial.

66.

Plaintiff requests a trial by jury.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays for trial by jury and after due proceedings had that there be judgment herein in their favor and against the named Defendants for:

1. Full equitable relief under ERISA, COBRA, and FMLA, including lost wages, restitution of Plaintiff's lost employee benefits, restoration of Plaintiff's seniority;

2. Compensatory damages against the Defendant, jointly and severally on her state law claims;

3. Attorney's fees and costs;

4. Prejudgment interest on all amounts claimed; and

5. Such other relief as law and equity allow.

Respectfully Submitted,

/s/ Dayne M. Freeman
**DAYNE M. FREEMAN**
**LOUISIANA BAR ROLL NO. 27807**
**OTHA "CURTIS" NELSON, JR.**
**LOUISIANA BAR ROLL NO. 25470**
**FREEMAN & NELSON, LLC**
Roumain Building
343 Third Street, Suite 404
Baton Rouge, LA 70801
Telephone No. (225) 343-1331
Facsimile No. (225) 343-1451
*Counsel for Plaintiff Celestine Polk*